STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. STANLEY D. COHEN, RESPONDENT.

436 N.W.2d 202

Filed March 3, 1989.   No. 88-255.

Alison L. Larson, Assistant Counsel for Discipline, for relator.

Paul E. Galter, of Bauer, Galter & O'Brien, for respondent.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is an original disciplinary proceeding against the respondent, Stanley D. Cohen, who was admitted to the practice of law on June 24, 1966.

Formal charges against the respondent were filed in this court on March 24, 1988. The respondent was charged with having violated his oath of office as an attorney at law, as provided by Neb. Rev. Stat. § 7-104 (Reissue 1987), and the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(3) Engage in illegal conduct involving moral turpitude.

. . . .

(5) Engage in conduct that is prejudicial to the

administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. . . .

DR 2-110 Withdrawal from Employment.

. . . .

(B) Mandatory withdrawal.

A lawyer representing a client . . . shall withdraw from employment . . . if:

. . . .

(2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

. . . .

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

. . . .

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

On April 13, 1988, a referee was appointed, and the matter was heard on May 31. The report of the referee was filed in this court on July 28, 1988.

The referee found that the respondent had violated DR 7-102(A)(7) and DR 1-102(A)(1), (3), and (5), but had not violated DR 2-110(B). The referee recommended that the respondent be suspended from the practice of law for 30 days. Exceptions to the report were filed by the relator on August 8, 1988. The exceptions relate to certain findings of fact made by the referee.

The record shows that a client of the respondent had purchased a toy chest at an estate sale. Several years later she found six series E U.S. savings bonds in the chest. The bonds had been issued to Hans and Louise Johnson as joint tenants. After attempting unsuccessfully to cash the bonds, the client employed the respondent to find the owners and obtain a reward or finder's fee. The client told the respondent to ask for a reward of one-third, but she would take less, and if she did not get a reward, she would light her fireplace with the bonds.

In December 1986, the respondent located Dick Johnson, a

grandson of the original owners, both of whom were deceased. The respondent told Johnson that his client wanted a reward of one-third and would kindle her fireplace with the bonds if she did not get a reward. Johnson contacted Earl Ludlam, a lawyer then practicing in Lincoln, Nebraska. After negotiations between the respondent and Ludlam, an agreement was reached for a reward of one-third of the net recovery after the payment of all costs, including Ludlam's attorney fees.

On February 16, 1987, Johnson contacted Stephen Guenzel, a lawyer practicing in Lincoln, and requested a second opinion concerning the arrangement made with Ludlam. On February 23, Guenzel called the respondent and, among other things, discussed Neb. Rev. Stat. § 28-514 (Reissue 1985) with the respondent. Section 28-514 provides:

A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient commits theft if, with intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it. Any person violating the provisions of this section shall, upon conviction thereof, be punished by the penalty prescribed in the next lower classification below the value of the item lost, mislaid, or delivered under a mistake pursuant to section 28-518.

Guenzel suggested a reward of $1,000 and offered to talk to the family about paying $1,000 plus the respondent's fee. During the conversation, the respondent said that his client had said that if she did not receive a reward she would use the bonds for kindling.

On that date, Ludlam withdrew from the matter.

On February 27, 1987, Guenzel called the respondent and notified him that the previous offer was withdrawn and that his clients did not need the original bonds because duplicates could be obtained from the Treasury department.

In January 1987, Gladys Watson, a granddaughter of the original owners, learned about the bonds from her sister, who had talked with Dick Johnson. On February 1, 1987, Watson talked with a Lincoln police officer, and Watson eventually

wrote to the Counsel for Discipline of the Nebraska State Bar Association. Later, an officer of the Lincoln Police Department suggested that she call the respondent and record the conversation.

On March 2, 1987, Watson telephoned the respondent and recorded the conversation. The respondent said that he had closed his file and was no longer involved in the matter, but instead of discontinuing the conversation continued to talk to Watson. During this conversation the respondent said, "So, my client feels that she'll light her fireplace with them if she can't get some money out of this . . . and *if she decides to light her fireplace with it, I'm gonna applaud her*, that you people are so greedy that nobody wants to pay her anything." (Emphasis supplied.)

When asked if burning the bonds was not a criminal offense, the relator said, "Nobody will ever know who she is, will they. No, I don't think [it's] a federal offense, we found something, we found something that ought to be of value."

When Watson asked if she could see the bonds, the respondent refused and said, "Yeh it is because you could get the serial numbers off of them and you could see if you couldn't write away and bypass her efforts entirely."

Later in the conversation, the respondent said, "If you don't believe that those bonds exist, just continue to ignore *me* . . . [a]nd ignore my client and *we* will take care of the whole thing ourselves." (Emphasis supplied.)

As the referee stated in his report, in this conversation the respondent voiced his client's threat and his personal concurrence with that unlawful conduct and demonstrated his participation in the threat.

On April 7, 1988, Officer Jerry Lowe of the Lincoln Police Department spoke with the respondent and recorded the conversation. In that conversation the respondent said, "Shit, they managed to screw me and my client out of her find and my time and you think we did something wrong."

In a disciplinary proceeding, the determination by the Supreme Court as to whether discipline should be imposed and what discipline is appropriate is made upon a de novo review of the record. *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 374 N.W.2d

833 (1985).

As the referee stated in his report, a lawyer shall not assist a client in conduct the lawyer knows to be illegal. DR 7-102(A)(7). The lawyer must also avoid the appearance of impropriety. Canon 9. The appearance of impropriety is conduct which adversely reflects on the fitness of a lawyer to practice law. DR 1-102(A)(6).

Under § 28-514, the respondent's client was guilty of theft if, "with intent to deprive the owner thereof," she failed to "take reasonable measures to restore the property to a person entitled to have it." It is abundantly clear from the record that the respondent's client intended to hold the bonds for ransom and to destroy the bonds if she did not receive the reward she wanted.

The respondent's misconduct consisted of adopting the client's methods and repeating his client's threat to burn the bonds if she did not get the reward. The respondent persisted in this conduct even after being specifically informed of § 28-514, after he knew that the rightful owners could get the bonds reissued without knowing the serial numbers, and after he supposedly had closed his file and was no longer involved in the matter.

The nature and extent of discipline to be imposed is determined by a consideration of the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Kelly, supra.*

Counsel for the respondent emphasizes the respondent's reputation and absence of disciplinary sanctions during the practice of law for 22 years. This is to the respondent's credit, but as an experienced lawyer his conduct must be judged accordingly.

We conclude that the respondent should be suspended from the practice of law for a period of 6 months. All costs are taxed to the respondent.

JUDGMENT OF SUSPENSION.

WHITE, J., not participating.